Good morning, Illinois Appellate Court, 1st District Court is now in session. The 5th Division, the Honorable Justice Raymond W. Mitchell presiding, case number 22-1787, consolidated with 22-1790, Mertes v. Village of Mount Prospect, Village of Mount Prospect v. Mertes. Good morning, folks. I'm in receipt of your motion to clarify, which, of course, we granted yesterday, and we appreciate you reaching a consensus on how best to proceed. So, we'll start with Mertes v. Village of Mount Prospect. It's our practice to allow 20 minutes aside with a 5-minute rebuttal, but, you know, of course, I imagine in the 1st case, we'll probably go a little bit longer, and in the 2nd case, because we'll be covering at least some of the same grounds. Perhaps we will be more timely. So, with that, we'll begin, Mr. Duda. Good morning, Your Honors. Good morning, Counsel. My name is Thomas Duda. I represent the plaintiffs in this case. May it please the Court. The issue in this case is that Eric Mertes was found by a hearing officer to be eligible for FASEBA benefits as a result of a series of factors phrased, and I know it's another case. It's the straw that broke the camel's back. But in any event, Eric Mertes was granted on March 18, 2014, he was granted a line-of-duty disability pension as a result of these catastrophic injuries. There is a dispute in the next case as to whether or not these catastrophic injuries were the result of Mr. Mertes pursuing what he reasonably believed to be an emergency. The hearing officer found he was catastrophically injured. He found that these were the result of what he reasonably believed to be responding to an emergency, and he found that Mertes was eligible for line-of-duty disability. But his award provided no relief in terms of actual premium payments based on the fact that approximately a month after the grant of line-of-duty disability benefits, Mertes, as a result of a letter from the village, okay, because the village wrote him a letter saying, we're not paying your premiums anymore. You got to do something. And what he did is they went on his wife's plan because his wife's employer paid 80% of the premium. So the hearing officer found not only that the use of the wife's plan disqualified Mertes from receiving any monetary relief under PSEBA, he found that simple availability disqualified him. And the defendant takes that position. So I'm not going to spend a ton of time arguing as to the circumstances as to why he took a policy that he paid $400 a month for rather than giving the village $1,600 a month at a point in time that he had lost his job. The authority in this case starts with the case Pyle versus Granite City. Just before we get into the merits of it, just so we're clear, and I think this is certainly implied by what you said, but basically in the second half of the hearing officer's ruling, he took away any benefit, any value to your client from the first part of the ruling. It kind of doesn't matter if he was qualified, if he was eligible, if he should have gotten them, because in the end, he doesn't get any relief for that eligibility. Is that accurate? It's accurate, but the way I would phrase it, he found him eligible, but you're eligible for PSEBA, but you don't get any. You don't get any money. You're eligible, but you get zero. Right. In perpetuity, you're never going to get anything. Doesn't matter. That's basically the rule. Well, that's really unclear. The defendant would like to believe that, but the circuit court judge, although it's not in his order, in listening to argument, the circuit court judge raised the issue with the defendant. MetLife may decide, well, of course, MetLife, it would be unlikely they don't offer insurance, and that they could get divorced. So that circumstance could change, and the hearing officer didn't address that, but it would be my position that the village would have to put him back in. Back on the village's plan. So, the part that's clear is he doesn't get any back payment for anything. Which gets me right into the Pyle case. So, Pyle versus Granite City was my case, and Jim Pyle had a really catastrophic injury fighting a fire. There was a back draft, and the city never put him on their insurance plan. I will concede that Jim paid the premium on the Granite City plan from the date they stopped paying up through the date of oral argument in the case. And the circuit court ordered the payment by the city, reimbursement of all past due premiums and future premiums. And the important thing that I need to point out to the court is that the insurance policy that Jim paid into was the same policy from the date that he was disabled through the date of oral argument. It was the same carrier, the same paperwork. I mean, he didn't even get a new insurance card. And the circuit court, as I said, ordered payment of all premiums. The appellate court's decision ultimately affirmed that portion of the opinion that reimbursed his out-of-pocket until he reached age 65. When he reached age 65, the court said, well, you're now Medicare eligible. And there are four paragraphs in the opinion, the two that most closely, in my opinion, are the holding in the case. Once you become, once you're 65 and you become Medicare eligible, whatever insurance that is covering you becomes secondary. And I'm sure the court's familiar with that because you must have spent 15 pages analyzing whether or not the policy was secondary or primary in the McCaffrey case. That was a huge issue in McCaffrey, the federal regulations that said, if you're receiving Medicare, that's your primary carrier. So the policy didn't change. What changed was the characterization of the benefit under that policy. And the premium that Jim had been paying didn't change. It was the same premium month after month after month up through oral argument. But because of the Medicare, because of the Medicare regulation, and I don't think it's in the statute. I do think it's in the court of federal regulations. The insurance policy that Granite City was carrying and Jim was paying became supplemental. And, of course, everybody knows that 10A of the CEBA statute excludes supplemental benefits from its coverage expressly. It specifically says that basic group health insurance does not cover, does not include supplemental benefits. So once the federal was now a supplemental policy, the city of Granite City's obligation ended, but they paid everything up to that point. Now, the cases since then have failed to emphasize the language that I emphasize. But it's in there. I quoted it for the court. I know you're not supposed to have extensive quotations, but I really wanted the court to have the ability to read the statute. Let me understand what you're saying. You're saying that the reason that PILE and that line of patients have to be limited to Medicare is because of that language about supplemental benefits? That's true. It's true in PILE. I'm not sure. I think McCaffrey and Berry went beyond that. McCaffrey and Berry, in fact, McCaffrey expressly states that if insurance is available to you, if insurance is available to you, it reduces the obligation of the municipality to zero. They did understand, clearly understood, how the introduction of Medicare alters the nature of the village's availability. But they took it a step further, and they took it in a step that really profoundly affects the benefits. So the next point I want to make, and I'm not sure who was on the panel in Berry, but Berry kind of in a snarky manner. Berry had a brilliant trial judge. Yes, Judge Mitchell was the trial judge in there. Contrary to what the snarky comment made by the appellate court, that there's nowhere in the statute that TCEBA is a lifetime benefit. PILE started out that that was a holding in PILE, and I quoted it for the court that it is a lifetime benefit, which is somewhat inconsistent, by the way. With their ultimate cutting-off is benefit at age 65. But federal law kind of required that they do that. Well, I'm a little confused by your concession for that supplemental benefits includes Medicare supplements. Because one way to read that language is that group health is covered, but we're not talking about vision. We're not talking about dental. We're not talking about these other benefits. We're talking about group health, period. And I think Medicare supplement is a group health fund, maybe a supplemental group health fund, but certainly a group health fund. I'm just asking if you think it necessarily has to be included. Not necessarily, but I'm reluctant to, I will assert that now that the court mentioned it. But I'm coming from, in my opinion, I'm coming from behind in this case. So I don't want to overstretch my luck. But the important thing is that the way this operates is really deleterious. Because I don't, what I don't concede is that 10A1 applies if the firefighter has to pay the premium or any part of the premium. What does 10A1 mean in Europe? It's a modification. 10A1 means that in the event that other insurance is payable to the beneficiary, it reduces the employer's obligation. Give me a minute. MetLife has been in the life of the Murdys during his entire career with the Village of Mount Prospect. And they do provide group insurance for their employees, but they only pay approximately 80% of the premium. So for the employees at MetLife to carry it, they have to kick in the other. The premium for the Village of Mount Prospect during the employment and during the time, and they do owe him the money from March 18th through April 14th, 2014. That during that time, they were paying $1,666. So the way that 10A1 was intended to operate is that when insurance like MetLife comes along, the employer can force the employee to reduce their obligation by $1,200. It reduces their obligation, but it doesn't eliminate their obligation. Okay. And this case, I think, is a classic example of how the General Assembly envisioned this proviso as being operational. If the employee has to pay the premium, or let me back up. The word payable to, okay, I've got to look the language up. Let me get the exact words. Health insurance benefits payable from any other source shall reduce the benefits payable under this section. Right. In my opinion, the word, I'm sorry, I don't mean to interrupt. No, it's inevitable on Zoom. The reduction contemplated in 10A1, it's a reduction not in the premium, but in the benefits payable, right? I guess a bigger picture question I have. I don't think, I don't agree with that. I think the word benefits means the placebo benefit, not the insurance benefit. Okay. So, is it your position that the availability of other insurance, whether or not the claimant has ever made use of that, just the mere availability of other insurance, that becomes a limitation on the obligation created under 10A? That's what Barry says. Barry says, Barry and McCaffrey, and McCaffrey, the police officers... You asked us to depart from those cases. Yes, that's true. No, I'm asking you to follow Pyle and not McCaffrey and Barry, I understand. Because, you know, I mean, I think ultimately the Supreme Court of Illinois has never decided this issue at all. And the reason my briefs are so long is in the event that I'm not successful for the Murdys, I'd like the Supreme Court, invite the Supreme Court to visit this issue. But the important thing, Your Honor, to understand is that if 10A1 does not contemplate that the employer maintains its financial obligation to pay for the insurance, then it's really, the statute is meaningless. Because I now have a case wending its way through the system where a firefighter had a concurrent employment business. And as part of the business, he employed his stepson. And he bought health insurance, he bought on the open market. At any point in time, you can go out and buy insurance for yourself. I mean, it's there. So he bought insurance for his stepson, nobody else in his organization. And the employer's taking the position if he could buy insurance for his stepson, he could buy insurance for himself. And if he could buy insurance for himself, then there are health insurance benefits that are payable from another source and he's disqualified. And as I point out to this court in 2010 with the enactment of the ACA, I envision a municipality when someone, when a firefighter is catastrophically injured while responding to an emergency, the employer saying, you're qualified for a placebo. Here's the website for the ACA, get yourself a policy. Because the ACA is an insurance benefit payable from another source. And if the firefighter can be forced to pay the premium, they're in the park. But I understand that argument, but what I'm confused about is your interpretation of 10A1, and we'll go back to this case. Let's say Mr. Marty's wife's policy was far less generous than the fire department's policy. He'd still have to take that $400 policy? What if it didn't have anywhere nearly the same benefits? Unfortunately, your honor, as much as my heart is with saying that they could turn it down, if you read that Peoria case where the city of Peoria changed their insurance policy and designated their high deductible to be the official placebo policy, I think if that's the law, they could insist that even if MetLife's policy was a substandard policy, that they accept it. But the question is, would they have to pay the premium? In my opinion, the whole purpose of the placebo statute is to relieve firefighters of the economic burden of carrying health insurance. Good coverage. By definition, they are people who generally need good coverage because they have health issues and injuries that are going to, for most of them, be with them for the rest of their lives. The CADFA report that I cited in my brief makes that point. I'm so glad you brought that up because that report, which we looked at, says that about a third, 25%, of the people who are getting it also have other coverage. So are they ignoring the law? What's going on? No, Your Honor, that's what I quoted in my brief. CADFA obviously is reporting that there are firefighters who took the other coverage, which reduced their employer's obligation, but somehow they did it in tandem with their employer's policy. Which brings me to the issue raised in McCaffrey quite strongly, and both the defendant and myself quoted from the court, that the language in 10A1 is so succinct that the court felt that they didn't get sufficient direction in how to implement it. I think the General Assembly could present themselves to a municipal employer were varied and different. It didn't have to be that hospitalization benefits were available through a traditional policy. And they... spaces that would protect the firefighters' rights under PCEBA, and at the same time, reduce the obligation of the municipality. And that's why there's not three pages of how one accomplishes that goal. I think the General Assembly contemplated on a case-by-case basis. The second point... To do that? Yes. The legislative intention was to provide coverage for firefighters or first responders for their health insurance until they receive the Medicare, because if Medicare, then that's when they want to cut it off, because then they... Is that where we are? That's where the 5th District Appellate Court is in Pyle. From Tom Duda's point of view, it was the General Assembly's intention that if a firefighter were killed, that health insurance would be available to his spouse for her life. Yes. And it would be... If he were catastrophically injured, he or she, the firefighter, would be covered for life. And oddly enough, Pyle says they are covered for life. But there is... There is... There's no question... Insurance becomes supplemental. And then, of course, the question is, is the term supplemental under the regulations of Medicare the same as the intention of the General Assembly to say supplemental in Section 10A1 of the... 10A of the statute? To make in terms of... I'm sorry. One quick question. You may know this, but are most of these municipalities self-insured, or is it mostly coverage they go and buy in the open market? For health insurance, most of them carry insurance. Public risk fund, et cetera. But for health insurance, they generally, they buy arm's length insurance. And most of the municipalities I deal with, and I deal with a lot of them, carry Blue Cross. I'm sorry. Could your client be reinstated to this plan that he hasn't been on for years? Could they... Is that something they could make Blue Cross do, putting back on the plan? Is that even something to do with? Usually, health insurance has a open period where they take on new clients, okay? It's a limited period of time. Whether there would be a way of avoiding that, I don't know. Probably during open enrollment, they could just put him back on as a new person. Yes. Okay. All right. Thank you. That was helpful. Keep working your plan. But the second point I wanted to make in terms of the paucity of content in 10A1 is many terms in this particular statute have been completely undefined. All right? So in McCaffrey, when the court says, we really can't do anything now, there's not enough direction. We recommend the General Assembly take another look at it. Then I think the court in McCaffrey was ignoring the reality that at least three issues came up where the Illinois Supreme Court completely gave content. That would be CROI, where they defined what the term catastrophic injury meant. NOVAC, where they established the date, the effective date that the employer becomes obligated to pay premiums, which is March 18, 2014. And GAFNI. I mean, GAFNI gave content to what is reasonably perceived to be an emergency. So the Illinois Supreme Court has not shied away from giving content to Section 10 by virtue of the succinctness of the General Assembly's drafting. And I would encourage the court to do that. And I outlined in my brief, probably too extensively, the basic rules of statutory construction, in which I think it's very clear what the intent of the General Assembly is, which is firefighters and police officers are in dangerous situations, which lead, you know, their families. That's the intent. And I cited three cases where if there's some clause in the statute that would tend to make that intent to defeat the intent, that the court can disregard those things. Pyle is understandable given federal law, but I think that McCaffrey and Barrier are wrong. Looking for another understanding of 10A1. Because, first of all, it does use the word benefits. It does not use the word coverage. So I think it's talking about health insurance. One understanding could be it's talking about health insurance benefits. What about, what do you think of this suggesting that what it means is that if somebody, say the child or the spouse, or it's put in place for whatever reason, and that the placebo then coverage is secondary. So there's benefits, you get benefits under your wife's coverage, and then the placebo coverage is secondary to that. Because that's usually what this phrase means when it's in an insurance policy. It means we're secondary. Your benefits are primary, we're secondary. Could it mean that? Or why couldn't it mean that? Well, it could. I didn't argue that in my brief, but I would point out if the word benefits refers to the underlying benefits, in my opinion, that changes my whole view of the word payable. Because payable then would contemplate that it would be payable by some other source, not by the firefighter. So if in this instance, if the policy with MetLife was substandard, but Kendra still had to make a $400 contribution, it would not be a health insurance benefit payable from another source because she has to pay the premium. I must concede to the court, I construed the word benefits to mean premium. Well, your Honor, I'm at the conclusion of my argument, and my summary is simply that the direction that the appellate or the fundamental issue of what happened there, and it led to a result that could really effectively repeal the statute and the benefit. Because particularly in the environment we operate in now, I mean, you can't open a newspaper without seeing some ad about, I think it's healthcare.gov is the Illinois navigator for the ACA. So the interpretation. With the email address on it and say, get yourself some insurance because we aren't paying. Thank you very much for your attention. I appreciate it. And thank you very much for having this video. I appreciate that as well. Very good. That's a tricky one. So a nice job. Good morning, justices and may it please the court. My name is Anne Skrotsky and I represent the village of Mount Prospect. I'm joined here in the room by Jason Geisinger. We are both of Kleinsdorf and Jenkins on behalf of the village. And just a little introductory note, I will continue Mr. Judah's two cases that both advance to refer to the parties as plaintiff or defendant or appellate or appellee because of the two cases. So, generally, we've been referring to the parties just by name, claimant or Mertz and then the village. So I'll continue to do that. I want to begin my argument by actually picking up what Justice McVie you and. And how can we determine what a benefit is? Pyle has an interesting interpretation and I'll reference the paragraph of that case. It's in paragraph 27 of the Pyle case. It talks about the fact that the benefits payable to Pyle, that being the premium of his health insurance, were reduced to zero because Pyle was the only person who was receiving a benefit under PSEVA. But the benefits actually were kind of a larger overall referral to any coverage and or payment that would have been received under PSEVA. And so if Pyle had had a spouse, for example, who did not reach Medicare age and had not become eligible for Medicare coverage, she would have been continued and the city would have continued to be obligated to pay her premium under the benefits concept outlined in the act. So it's a little bit broader than just the concept of paying a premium or paying for coverage, but it's the idea of the benefit to the firefighter extending to potentially his family and then children, if applicable. So that would be the broad concept of benefits receivable under the act. And again, you're basically saying the same thing Mr. Duda said, at least initially, which is that benefits are given under the act, which is coverage. The benefit is coverage. Yes, well, coverage. Yes. So we agree on that point. And I think Mr. Duda has kind of outlined and done a little bit of my heavy lifting. So I don't, I'm not going to belabor the point, but I just wanted to point out that there was sort of an analysis of that idea of what is the benefit, how, how far does the benefit go? And then what is. So then kind of reset. If the reduction is coverage, what do you believe the, how do you reduce the coverage? So when they reach that point that reduction is required, do we, are they reducing one of the, the policy coverage items, or is it just that there is a reduction in payment of the premium? Well, as argued in my brief and has already referred to by Mr. Duda, our position is that the reduction of coverage simply has to be to 0. And this is the, this is the position that was taken by the McCaffrey case. The McCaffrey case said, okay, so it says that availability or secondary source health insurance reduces the villages obligation, but there's no way to calculate set off it. Because that's totally dependent on an interpretation of, well, do the benefits have to be comparable? Does the plan, does the plan offered by the village have to be comparable to the plan available in the secondary coverage? If the secondary group coverage is a higher level, let's say it's a gold plan or silver plan is kind of analyzed under the ACA. Does the village only have to pay for the villages basic plan or the villages available plans? Or are they obligated to pay for choices and coverage that the claimant is making? So, there's really no way to calculate what a, what a fair benefit or fair set off or a monetary value of 1018 is. And that's what. You basically say, you can't figure out how to reduce it. Paragraphs and paragraphs trying to answer these questions and saying that there just isn't the guidance. And I wanted to point out and Mr. Judah actually kind of makes my point for me. That the McCaffrey case was decided in 2021. Has been has been revised and updated by the general assembly in the past year. And they chose not to give any more. Any more guidance, but they didn't pay any attention to what the appellate court has done. As they often go, well, that's true. I would agree with you, but I think that that is partially true. But what I would point out that the amendment that they did make in the past year is in response to the appellate court interpretation. How do you figure that? Yeah, so the appellate court has had found that in file, but in the case that the city only had a city or municipality only had to. Allow the claimant to be on the basic plan, right? That was the case law that a municipality only had to cover a placebo claim that whatever the villages designated basic plan was. So, the amendment to placebo that came up forward in the past year as the phrase. An individual whose entire premium is paid in accordance with this section shall be offered by the employer, the choice of any health insurance plan available to currently employ full time law enforcement. Correctional or correctional probation officers before fire. So, that's a direct interplay of the, the state of the case law saying, well, you only have to provide the basic plan. So, then the General Assembly amending and the General Assembly did that to indicate that there was any more further guidance on set off or any other interpretation of. So many basic 1, which is what is your response? To Mr. do this argument that the way you are reading. It completely eliminates all the benefits of. Because everybody can get insurance. Okay. So I. The elimination of the benefits is a narrow reading of it because again, I will point out in the pile case pile in the pile case, the financial benefit, or the coverage for pile himself was reduced to 0. And the same argument was made is that it's an elimination of the benefit. And the course, I know it's not an elimination, because 1st of all, if he had had a dependent, if you had a wife or a child, that that dependent would have been covered. So that that doesn't. Who has coverage available, no matter how much it costs. Has to go on that coverage and then use their benefits under the statute. That's your argument that really is, or if there's a limitation to your argument, I'd like to understand what it is. I understand what it is in tile because in tile, it was limited to Medicare eligibility. But you're saying, no, no, no, no eligibility for any insurance. So, explain to me where the limitation is and why it doesn't limit. Under your sure, the limitation would be if the, if the claimant didn't have secondary source. Could go, he has been. So, if assuming that the hearing officer's order is not disturbed in any other way, assuming that the hearing officers finding that the claimant is eligible for stand. Then, if he, if his wife, again, if she was her job. He's the village has got a problem. Okay, you can go out and buy on the, on the open market. It's gotta be covered that your spouse has, or you have from another job. That's the limitation on your interpretation. I, because I would argue that that's the word available. The word is that the benefit has under 1018. He has to have the benefit table from any other source. So, it's gotta be a source that's already in place that his wife has, or he has, or his child has somebody that he can get covered. It doesn't have to go out. That's that's a little bit payable from another source. Yes, that's that's how I would interpret that language. I don't for my purposes. I don't have to stretch. The language to cover, and I'm not making any argument about can't go and buy it on the open market. I understand the point that Mr. is making, but that's simply not necessary to reach in this case. Okay. So here's my 2nd question. What about the fact that under the. The study done by the commission on government forecast accountability about. 25% of people who are getting these benefits are also getting benefits from some other source, including Medicare. Also coverage coverage. What does that what's what's the significance of that? You know, I don't I don't assign any particular significance to it because I think in many of these cases, this is being done cooperatively or. By benign neglect, let me put it that way. But I think if you look at the case, and Mr. agrees with this, if you look at pile, Barry and McCaffrey, it's very clear that once somebody becomes Medicare eligible. Not not taking it, but once they hit the age of 65 and become Medicare eligible, then placebo benefits can be reduced to 0. So, if we are to assume that people are covered by Medicare and also receiving placebo benefits, the only conclusion I can come to is that municipalities are voluntarily. Continuing to provide coverage, or that they're unaware that they could reduce coverage at that time. By saying, you have to take Medicare and. You are no longer eligible for the benefit because, I mean, those those 3 cases couldn't be more clear. Um, specific. Africa says, um, go so far as to say that a claimant who want who didn't want to take Medicare that claim it had said, no, thanks. I'm not going to avail myself of this benefit. So, and this is my last question, you would suggest the recent amendment. Section 10, a that said you were entitled to any plan. Was a response to file, but is there something specific in the legislative history that suggests that it's a response to file? Because there's a lengthy gap between those 2 things. I'm just wondering what you're. Why do you think that's a response to file? I don't think there's anything in the legislative history that specifically suggest that it's a direct response to an appellate case. I'm just saying that the reason you would make an amendment saying, you have to not just offer the basic plan is because there was appellate case law in the state saying all you have to offer is the basic plan. So, that's the, that's the contradiction. They're making an amendment saying, you have to offer them all of the available any plan that's available to your other employees. Not just the basic plan. That was the amendment. And that's a direct contradiction to the appellate case law that said, all you have to give. Okay, well, so let me just make the point and Mr. Duda also. I think it's the case I can provide that I can provide that specific site. Certainly by the end of this argument. Okay, well, so let me just make the point and Mr. Duda also kind of made the point earlier. So I don't have to go into it with too much detail, but there is just a challenge and it's outlined in the. McCaffrey case about what, how to calculate a municipality set off amount and whether the appellate court can reach that. But I also just want to point out that the administrative posture of this case is that the hearing officer. Reduce the benefit to 0. so the question is whether he was erroneous in adopting the position of those. Of those cases, the direction of those cases and saying that there was no premium to pay and in this case, the. Availability of the secondary coverage is. You know, virtually identical to the plans that would have been available under the. The village's coverage, but that's not necessarily the case and I think. The court would have to engage in an evaluation of. What is the quality of the coverage? What is the deductible? Does the deductible have any kind of cash value and simply put 10? 1? A does not say. The employee is titled to whatever the cash value of the basic plan coverage is. And then they can make their choices as they wish and I think that's what Mr Judah is asking this court to read into. Um, the, the statute is that there is some kind of cash value to the benefit and that that can just be set off against. Whatever the, the cash is, uh, the cost is of the alternate coverage. And that's just simply far beyond the confines of the language of the statute. Uh, I thought that. Mr. was asking for reimbursement for the money that he had paid on his wife's policy. So that's a finite value. He's also asking for the decision that the villages obligation now and into the future be 0 to be reversed. So that the village has a continuing contribution obligation. To the wife to miss. Premium. He's asked he's asking to reverse the decision and to be made whole and whole in his mind would be to provide have provided the coverage. Of the employee insurance. And whatever coverage it provided for his wife, who actually had her own policy and their children as per that employee relationship. Employer employee relationship at the time that he was declared to be. Tropically injured, I mean, we would concede that we can see that under 1018. He's catastrophically injured, so he's also asking, but you don't concede that he's entitled payment because you don't believe it. Anyway, that's the next case correct. We're jumping a little bit ahead to the next to the next portion. But, yeah, he's asking for a calculation of a set off amount. And the, the hearing officer concluded that he just had no ability to do that and the availability of the secondary source coverage, the benefits available from another source. Reduce my prospects obligation effectively to 0 cash value, because their obligation is to provide the coverage. If there's not other coverage available. And create an incentive for municipalities just to. Like, deny, deny any coverage across the board. See, if these folks go out on their own, go on their spouses policy, which is what happened here as a result of that. Purpose of this. Well, I think that the purpose of the statute is to ensure that public servants who are injured in emergency situations have. Adequate health insurance coverage for life. I agree with Mr that that's that's ultimately the purpose of this. Statute, but the, the villages obligation extends to ensuring that the claimant has that coverage and he does. Under his wife's plan, but there would be no 10, 1 a, the limitation section that just wouldn't exist. If the idea was, we don't want the. We want to just guarantee this and guarantee that there's no conflict by just saying. You have to keep them up instead. There is a limitation. There is a section 1018 and it says, however, your benefit is reduced by benefits table from another source. And that that language does create sort of a little bit of an adversarial posture because the village. Is absolutely has a response. Significant financial burden. I'm not going to hire that. And the village has a responsibility to its. Taxing constituents to make sure that it doesn't just write a blank check for people who have. Appropriate and adequate coverage available and payable from other sources. So, if there aren't any other questions, I just want to conclude by sort of framing the argument. You know, receiver requires and the case law interpreting are clear that where there are secondary source coverage available where there are benefits available from another source. That the potential to see a claimant or recipient. Has a responsibility to avail himself of those benefits and obligation to avail himself of those benefits. If that's possible, and in this case, it is so the hearing officer correctly determined. And the circuit court correctly affirmed the hearing officer when they determined that the availability of an alternate full coverage group plan effectively reduces the financial contribution of Mount prospect. To 0 for the time being, unless circumstances change. And considering the question that judge asked in the circuit court, what happens when circumstances change? Does he then return to the village and have been picked up coverage? Yeah, I think well, so again, this is assuming that none of the other findings of the hearing officer are disturbed throughout this. Change and his white was laid off. I think he would return to the, to the. Village and say, I have been determined eligible for the coverage. I no longer have coverage available from a secondary source. I need the villages to pay my coverage. The village would be obligated to pay the coverage until he turned 65. And then once again, he would drop off because he would be eligible. And I just wanted to include also, especially for just by giving you the site of the case on the basic coverage. It's after versus city of Peoria. 2019 ill at 3rd. 180702, which is cited in our. All right, thank you very much. Thank you. Mr. we've got a few minutes. I was searching through all my papers because I knew that the defendant had cited that case and I couldn't for the life and they remember the name of the plaintiff in that Peoria case. So, I'm not going to go into that. But, but my, my rebuttal is, is, is quite short. The way council recited the language of 10 a and said, if there is, if there are benefits payable from another source. It shall reduce the municipalities obligation. I think those words establish the erroneous conclusion of the hearing officer because payable from another source. The word another source means a source other than. The catastrophically injured firefighter. Okay, the payable from the pocketbook of the catastrophically injured firefighter is not the another source. It's kind of. 10 a1. That's exactly what happened here. And I can't emphasize any other source would be any source, other than the municipality. I, that I don't agree. I think the payable from another source. Well, no, that could that. The anyway, I understand that. I don't have any further rebuttal. I think I think the issue is. It's been clarified through the discussion. Okay, thank you for your excellent arguments and now on to the other case. 20 minutes aside and 5 minutes rebuttal, but you don't need to use all your time. And with that, we'll get started. Thank you and may please the court and I will do my best to be concise here because I know we're, we're dealing with a secondary argument. But I also want to just frame the argument in this way that this actually. So, we're, we're kind of going back in time, even though it's a, even though it's a second in time argument. So, we're now looking at 10 B of. Which states that in relevant part that in order for the firefighter spouse or dependent children to be eligible for insurance coverage under the act. The injury or death must have occurred as the result of the firefighters response to what is reasonably believed to be an emergency. So, the village has argued that the hearing officers order was incorrect when it determined. That the as the result of a response to an emergency. But we're not just arguing a direct causation argument, so we're not asking the court to necessarily go back and re, examine the roots of each injury and determine whether whether the injuries were caused by a response or suffered in a response to an emergency. Because what I'll actually point to is an exhibit that was jointly filed by the claimant and respondent. So, by Mertz and the village in the circuit court's administrative review case, and that appears in the record in volume 2 of the record at C03488. That is claiming injury history and so. I'm going to refer to that because it was jointly submitted by the parties and it's established each party's position as to the injuries that have been suffered by the claimant. And what the main thrust of our argument is, is. Throughout the record and throughout the case history. It's been established that somewhere between 17 and 21 different injuries were suffered by the claimant. Okay, and those injuries were suffered over almost a 20 year period. And so the argument is that the injury history makes the claimant to attenuated to the response to the emergency to be considered for as in a response to emergency for the purposes of. Okay. Cool finding by the hearing officer. So, just understand the posture of these cases. You want us to disregard or, or overrule the factual findings. Of the, we shouldn't defer to their factual findings with your answer. And yet we should defer to the legal conclusions and the other things. Of the hearing. So, I would characterize this as a mixed question of law and fact. And I think actually, if you look at the Thompson 1st. Submitted that does a good job of laying out what the standard of review is for a case like this because. The village can see that it has conceded throughout the proceedings that of that injury list of that exhibit that I'm pointing you to, whether it's 17 or 21 injuries that 2 of them were actually suffered. In response to what could reasonably be believed to be an emergency. So, we, if this court adopts the standard that is. Adopted in the Richter case, and then some previous case law before the court that. Just any element whatsoever. Howsoever small of a response to an emergency qualifies a claimant for. Then we can see under that interpretation that this thing that would be eligible for. So, what we're arguing is not that the fact should be different because. You know, we're not arguing. There was never any emergency that contributed to the, to the claim of injury and it's, we want you to go back and look at the facts and disturb the hearing officers finding that there was an emergency response. We can see that 2 of the elements to at least 2 of the responses of the injuries that are listed were in response to emergencies. But what our argument is, is that when you're looking at an injury history like this, it's a cumulative injury history. So it doesn't fall under the definition of response to an emergency that's been expressed in the Patterson and Gaffney cases. So, this is a mixed question of law. Where's the legal question? Just clarify where's the legal question in that? What's the legal question is the interpretation of response to an emergency. That's the legal question that's expressed in gap. And so it's whether a cumulative injury can be suffered in response to an emergency. So, you want us to find it as a matter of law. Is that what you're saying? Yes, but essentially, yes, but it can't be that cumulative, but you can't look at a 20 year employee health history and say that this can be reasonably interpreted as caused by a response to an emergency. Because what I will specifically say is there are several cases, appellate cases, which, which examine the idea of compound injury. And, you know, as, as Mr. June, I haven't can see it in the first part of our argument. The villages playing a little bit of catch up here, right? Because essentially what these cases find is that if there's any part. Emergency as per the definition of our. But the cases that examine compound injuries, you know, the richer case, which I've cited the 2011 2nd district case. That is where the employee question sustained 2 injuries. 1 of which was an emergency injury and 1 of which was a non emergency injury within 1 year. That he cited another case, the bar versus Bartlett fire protection district case, and that case, there were 3 injuries, 3 back injuries, 2 emergency and 1 non emergency suffered over the course of 3 years. And then the final case to talk about a compound injury is failing versus McHenry county sheriff's department. And that case, there were 4 total injuries, 2 of which were in response to emergencies and the time. Attenuation was 3 years. So, where a court has looked at this, they are looking at. There's a couple of incidents close together in time. And there's an element of that. That's emergency here. Again, if you look at the record, and I'm only asking you to look at what clean this. Or the claim that himself has agreed to submit to the circuit court. Again, it's 21 separate incidents, not even all of those 21 incidents occurred while on the job, much less in the response to an emergency. I mean, so basically you're either. Injuries not should not be looked at, or if they should, this is too long a period with too many injuries, just misapplied the cumulative injury. Correct correct and that's why you're getting a question of 1 fact. That's why our position is the next question of 1 fact. Because again, the hearing officers order just found, hey, if I find. You know, not even when I, the 1%, I mean, there's no standard. If I find any part of this was potentially suffered or due to an emergency response, then. At the end of the claim, it qualifies for. And that when you're talking about somebody who is. You know, a firefighter and who is engaged in a physical job, there's just never going to be somebody who, unless we have a finite incident. A direct cause causal link. There's always going to be somebody says, okay, well, 10 years ago, this happened 8 years ago. This happened 6 years ago. This happened. And on this kind of record, it's just too attenuated to award. The benefits, so that is the 1st part of our argument. The 2nd, part of our argument deals with the statutory construction of. Continuation coverage, and this part of the, this part of the argument. Talk that is examining the timing of the claimants submission for and when it's attached to the claimant. Again, we have a bit of an uphill argument here, and I'm not going to. Try to hide that fact, because we're. Yeah, we're working with the case and the basically says that it's attached on the base of the catastrophic injuries. However, I think if you look carefully at the case, you'll find that that case doesn't actually stretch to a situation like that. The biggest distinction is that in the case. There was no administrative procedure by the village of country club hills to have a determination of placebo benefits under 10 B. So, when a claimant becomes catastrophically injured, the 1st step is that they apply for and are determined to qualify for a line of duty disability pension under 10 a. That establishes catastrophic injury and as a matter of law, you know, the case settled on this point at least, which is refreshing in the area that there's some element of settled case law. But the settled case law says that a catastrophic injury as a matter of law. Is determined by the line of duty disability pension. So when he's found eligible for that, he qualifies as catastrophic injury. But then there's a 2nd element of a placebo analysis, which is what is the injury suffered in response to an emergency? So that's a separate proceeding and determination. And the village has the right to establish administrative procedures for. Finding that determination, making a finding on that determination. Now, in the case, the village of country club hills has no such administrative procedure. They did not undertake attendee determination as to whether the 3 was suffered in response to an emergency. They merely said, okay, well, if you're catastrophically Internet as pursuant to a line of duty disability pension, then. You are eligible to claim benefits and we're awarding the benefits to you. So, in the case where they examine, when did those benefits attach? The benefits were attached on the determination date, but that's because there was no 2nd determination date. There was no determination date of eligibility or. So, when a village does employ administrative procedures, when they avail themselves of the privilege to set administrative procedures and make a determination on eligibility. The attachment of benefits should occur on the determination of eligibility for. And the claimant in this case left the villages health insurance and moved on to his wife's not like group coverage health insurance plan. Before he even applied for consideration of eligibility for. He had his line of duty disability pension award. And the village said, okay, well, we don't have any obligation to continue to pay your premiums anymore. Which they wouldn't have, by the way, if he had never applied for the coverage, and they wouldn't have had an obligation to continue to pay his premium. So, the village was well, within its rights to notify him. Okay, you have to make a decision. What are you going to do about this? So, he left the plan and then he applied for determination. So, the idea of awarding benefits to somebody who had not already been on the health insurance. To begin with, at the time, he even applies and who would have been in the plan. I mean, that's. Noted that in the pilot case, Mr. Kyle continue to pay the premiums until he was awarded the reimbursement for that out of pocket costs. But here we have a claimant who who abandoned the group coverage and so. You know, that that defies the idea of continuation coverage and and having a benefit available. When the benefit has has not attached. At the time that the, the claim, at least the plan. That dovetails with interpretation of the Illinois insurance code, which provides that continuation of employer sponsored coverage. Is the health insurance plan that that is. That the firefighter was enrolled in at the time that he became eligible for continuation coverage. Um, and this, our firefighter was not the claim. It was not enrolled in any health insurance plan at the time. That he became eligible for continuation coverage. So, our argument is that because he abandoned the employer sponsored plan and was not on a plan at the time of his application for conceivable benefits. The court or the hearing officer cannot in retrospect. Award and the ability to be to reactivate the plan to avail themselves with continuation benefits. Just how I understand. Okay, 1 in those municipalities where there's no hearing automatically. Given once you're determined to have stock of the injury. And another timetable for those villages that are used that decide that want to have it here. Correct so, and that squares with the no act case. The no act case says the benefits attached on the date that eligibility is determined. But in that case, because there are no procedures eligibility is determined on the date that the, that the claimant is found to qualify for a line of duty disability pension. So, it's in other in other proceedings where there is a clear administrative procedure set by the municipality to to apply for and then qualify for coverage. It totally reads section 10 be out of existence. If you don't defer to that administrative proceeding for the attachment of benefits at the determination of that eligibility. There's no reason to have that date be on the determination and then and then even have subsequent proceedings. If that if that's the 1 and only date, I mean, it just reads reads the 10 meeting out of existence. So, I just want to conclude by saying, of course, the village. You know, is is trying to balance the interest of not only its employees and their. Their rights and their benefits and making sure that it's employees and former employees are taken care of, but it's, it's trying to balance it. Responsibilities to it. The corporate, the idea that we're, we're asking ultimately for additional guidance, and this is an area in which. The, there's a lot of litigation and a lot of case law. And, you know, we're, we're trying to make sure that we responsibly interpret and apply that to the, to the balance benefit of everyone involved. Thank you. Thank you. Mr. Duda, you're on. May it please the court counsel up until up until this point. I, I've, I've had a very. A very pleasant relationship with my opponent, but I have to tell you her phrase that my client abandoned his rights to in his behavior and opted to take another insurance. A has no legal significance, but actually is completely untrue. The village had been writing letters to directly to Mr. Murphy, even though they knew I was his lawyer, their human resources person is writing letters to him, telling him that that his insurance was. There are dollars in premiums and that he was going to be terminated beginning in September 13th of 2013. This is before the pension hearing. I wrote to them saying, we don't want those benefits. He's entitled to a continuation of his health insurance benefits based on his injury. That led to a whole series of correspondence, but the pension fund issued it's written decision, March 26, 2014. I wrote to the village. And on April the 4th. Asserting my asserting Merck's claim to a placebo. That was the first time this from there had been correspondence with the village in September 2013. The May letter in response to my. That there was an application. Incidentally, the I don't I'm not sure the statute. Makes any mention of an application or makes your rights contingent on it, but be that as it may. Mr. Mertz Mertz filled out the application as soon as he received the application. The idea that he abandoned anything is just simply. Ludicrous, but that's of no legal consequence because there are 2 Supreme Court decisions that dispose of the employer's argument. Okay. Council refers to Novak. I want to read word for word what Novak says. Okay. This is on 2011, Illinois 11111838 paragraph 29. For the reason set forth above, we conclude that under section 10 of placebo and employers obligation and employers obligation. To pay the entire health insurance premium for an injured officer and his family attaches on the date that it is determined that the officer's injury is catastrophic. That is on the date. It is determined that the injured officer is permanently disabled and therefore eligible for a line of duty disability pension. Right. There's no that that is the date the relevant date and that's March 18, 2014. The effort to evade that clear holding that that there were no rules and regulations. That somehow the village by ordinance or by implementation of administrative procedures can reverse that decision itself has been. Is the right to prepare regulations regarding the procedures to be followed in determining whether someone is eligible for placebo. But the appellate court specifically said that. Right to write these rules and regulations is limited and they cannot be inconsistent. With the statute as interpreted by the Supreme Court. All right. The Supreme Court in Novak has interpreted when the effective date of payment under placebo is made. Therefore, any rules or regulations that attempts to circumvent that is contrary to Peterson and contrary to the exact wording of section 20 of the statute. And I don't need to rely on basic argument in the case of local 50 Illinois International Association of Firefighters versus the city of Peoria. Peoria had implemented a series of one. Actually, it was only two ordinances. And which substantially altered the interpretation of placebo made by Croy, Novak and Gaffney. And they said that we're doing that under the assertion of our home rule authority that under the Illinois Constitution, a home rule unit has the power to concurrently enact legislation along with the General Assembly and the Supreme Court said, oh, no, you don't. When the Supreme Court gives an interpretation to a statute, that's the interpretation. You can't change it by local ordinance. So the argument that Mount Prospect now has procedures and those procedures can change the effective date is simply contrary to the local 50 International Association of Firefighters case. When we come to the primary issue as to whether or not the catastrophic injuries were the result of the performance of duties that The argument has has no merit for two reasons. Okay. Okay. The first is that the issue of causation. In other words, what led to the disability that entitled Eric to line of duty disability benefits. That is incorporated in the pension. In its decision, the 21 episodes that that Eric had engaged in where he injured his back and that as a result of those he became so disabled that he was entitled to a line of duty disability that finding is is is part of is part of The healing doctrine and the case, I would say, I would ask the court to I cited in my brief Cronin versus I think the village of Spokane where where the appellate court said the pension board determines what caused the disability. It's only our job is to simply scrutinize whether or not Any of these injuries were the result of responding to what they reasonably reasonably believed to be an emergency. I'm going to wrap it up pretty quickly, but I have to argue. The second district's definition of clearly erroneous clearly erroneous is probably the standard of review for this issue and The second district was emphatic that clearly erroneous was a highly deferential standard and it's not enough to just feel that the standard is that you come away with a with the belief that a mistake has been made and the appellate court held It's not just that you feel there's a mistake. You have to feel the mistake as as if you're in the presence of an unrefrigerated fish that had been out for more than five months, so I don't think the hearing officers a decision reaches that standard put forth by the second district. But if you if the court wants to go into any detail with the episodes that that led to the disability. I would point out two things. First, the hearing officer not only listed each individual event and gave some degree of detail as to how they constituted an emergency. He actually analyzed the pension board examining physicians who gave an opinion. And there were two opinions that I think the hearing officer was impressed by One was Dr. Stamoulos who said that the the disability was the result of The cumulative effects of a number of these these these sequential back injuries, but that the quote the straw that broke the camel's back was the episode of May 5 2011 right and He relied the hearing officer relied on that opinion. Frank Phillips gave an opinion because the village had been early the pension board was concerned whether the Auto accident in April of 2012 might have contributed to the disability and Frank Phillips found that it had nothing to do whatsoever. The auto accident did nothing to advance the disability. But if you look at the May 5 episode. This was an emergency. The defendant admits an emergency because we have an unconscious victim who's not breathing. Who has a stroke and there's a limited period of time to get him to the hospital so that he doesn't die. Eric is is on the on the foot part of the the fire department cot and they're rolling down the stairs to get to the ambulance and the front the wheel comes off of the curb and the patients about to fall out of the Force to prevent that and he re injures his back with this injury within within a week. He's referred to an orthopedic surgeon right Stanford tech Dr tech. Within another week recommends a double fusion of the low back and that was performed on July 7 2011 Eric returns to work after almost a year off of work. He does return to work. But after he returns to work. The fusion is a non union event which happens in a certain Percentage of surgeries and it's the non union of that fusion and that that led to his his getting a light or needing a light of duty disability, the The idea that there's no that the causation is attenuated It doesn't make sense. The hearing officer relied on this sequence which which clearly temporarily and with medical support indicates that the May 5 2011 injury is the straw that broke the camel's back and Therefore, the, the hearing officers finding was clear not clearly erroneous. It was completely supported by by the evidence. So I would suggest that the complaint of the defendant village of prospect be denied any relief of any kind whatsoever. Thank you very much for your attention. Again.  Final word. Thank you, your honor. I would just make a brief point on rebuttal and I will also compliment Mr Judah and say, yes, we, the parties have worked together very cooperatively during this process. And I don't mean any disparagement. And now that that the Patterson case, which for Peterson Patterson Peterson, which allows for the creation of administrative procedures by home rule unit to administer placebo. There is not a limitation on that on the attachment of the benefits, either in the statute of the case law. I'm arguing that no act does not do that. Limit the, the administrative. Who only have attending attachment date. So, establishing a procedure, an administrative procedure under 10 B for a placebo determination would not conflict with that. Neither would it conflict with the statute, which does not provide a clear attachment date for placebo benefits. So it's simply not the conflict that Mr. It is, although he's completely correct. Statute by the creation of their own administrative procedures. I fully agree with that. But that's not what we're arguing has been done in this case. And then, you know, in terms of the. Cumulative nature of the injury, I think the fact that Mr Judah himself is using the word straddle back is just an indication of how much had accumulated over the course of the years. And the nature of the truly is. The statute is is limited. I mean, we wish that every public servant or public employee was granted the, this kind of benefit and have this kind of lifetime security. But that's not the case. Statute indicates that it's only for extraordinary. Whether a public servant qualifies to receive the benefit. So, the benefit is not, you know, just something that's handed out without examination of whether it's truly a case in which those benefits have been justified. And our argument is that it's simply not. And so the hearing officers order should be overturned. Thank you. May I make an oral motion for a 1 sentence? Sir? Rebuttal. 1, 7. Eric Marty's had to file a declaratory judgment lawsuit hearing before the village. Period. Yes. Okay. Well, I want to thank counsel for wonderful arguments this morning and for your superb briefing. You've given us a lot to think about the matter being taken under advisement to further study and opinion, but no matter how the case turns out, your respective clients can take comfort in knowing that they've been very capably represented by your excellent advocacy. And we, we thank you for that. Thank you, your honor. Thank you very much. Thank you. Thank you.